James H. Power
Lissa D. Schaupp
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY  10007-3189
(212) 513-3200

ATTORNEYS FOR DEFENDANT
BEIJING SHOURONG FORWARDING SERVICE CO. LTD.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THELMA SHIPPING CO. LTD.,

        Plaintiff,

-against-

BEIJING SHOU-RONG FORWARDING SERVICE
CO. LTD. a/k/a BEIJING SHOURONG
FORWARDING SERVICE CO. LTD.

        Defendant.

08 Civ.1804 (PAC)

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR COUNTERSECURITY**

Defendant Beijing Shourong Forwarding Service Co. Ltd., (hereinafter "Beijing" or "Defendant"), respectfully submits this Memorandum of Law in support of its motion requesting that this Court issue an Order, pursuant to Rule E(7) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rule"), directing that Plaintiff Thelma Shipping Co. Ltd., (hereinafter "Thelma" or "Plaintiff"), provide countersecurity on Beijing's counterclaim.

## PRELIMINARY STATEMENT

Beijing is entitled to countersecurity in support of its counterclaims against Thelma in connection with Thelma's breach of the Charter Party agreement for the vessel MANASOTA (hereinafter "Vessel"). Thelma's breach of the Charter Party caused Beijing to suffer actual economic damages to date in the amount of US $181,604.53 (excluding attorneys' fees, arbitration costs, and interest – all recoverable under English law).

The United States Court of Appeals for the Second Circuit and Courts within this District have recognized a defendant is entitled to countersecurity when it alleges a non-frivolous counterclaim that arises out of the same transaction and occurrence as the plaintiff's claim. Here, Beijing's counterclaim arises from the very same Charter Party addressed in Thelma's complaint and Thelma's breach of that Charter Party caused substantial quantifiable damages to be suffered by Beijing. As such, this Court should order Thelma to post countersecurity within ten days of its opinion and order. In the event Thelma refuses to comply with the Court's Order for countersecurity, the attachment order against Beijing should be vacated.

## FACTS

Thelma's Verified Complaint alleges it has performed all the tasks required under the Charter Party; entitling it to payment and relief under Supplemental Rule B in the amount of $962,811.60.

At all times material to this action, Thelma Shipping Co. Ltd., was the owner of the motor vessel MANASOTA.

Pursuant to a charter party dated November 9, 2007, Beijing time-chartered the Vessel from Thelma Shipping Co. Ltd. The Charter included the standard New York Produce Exchange charter party terms. Under the terms expressly set out in CLAUSE 1, owner shall "keep the vessel in a thoroughly efficient state in hull, machinery, and equipment for and during the service." (Affidavit of James H. Power In Support of Defendant's Motion for Countersecurity hereinafter "Power Aff.")

CLAUSE 1 of the Charter Party required Thelma to keep the Vessel's hull free of fouling including, but not limited to, underwater growth for the period of the charter. (Power Aff. Exhibit A1)

On or about November 6, 2007, the Vessel was delivered to Beijing in or around the waters off Singapore, and shortly thereafter performed a voyage in ballast to Itaguai, Brazil to load a cargo of iron ore. The Vessel arrived in Itaguai, Brazil on December 5, 2007. Because of port delays and ships congestion, the Vessel could not immediately load its cargo of iron ore. (Power Aff. Exhibit A2)

3

Despite port delays, the Vessel nonetheless completed loading by December 23, 2007 and departed Itaguai, Brazil on December 23, 2007. The total time between arrival at Itaguai and departure Itaguai was 18 days. (Power Aff. Exhibit A2)

Thelma, by and through its London counsel, Waterson Hicks, has admitted that substantial hull growth accumulated on the Vessel during the 18 day port period in Itaguai, Brazil from December 5 through December 23, 2007. Despite Thelma's knowledge and awareness that "[u]nderwater growth is a notorious feature of Brazilian ports," Thelma failed to comply with CLAUSE 1 of the Charter Party by allowing underwater growth to accumulate to such an extent that the Vessel could no longer meet the Charter's speed warranties. (Power Aff. Exhibit A2)

The Vessel, sailing direct from Itaguai, Brazil, arrived in Singapore on January 25, 2008 at which time Thelma contracted for an underwater hull inspection. A January 25, 2008, underwater hull inspection revealed that the hull was "heavily fouled." The underwater growth was permitted to accumulate on the Vessel's hull thereby putting Thelma in breach of the Charter Party. Due to the fouling of the Vessel's hull, the Vessel failed to meet the warranted Charter Party party speed for the return voyage from Brazil to Singapore. As a result of the Vessel's failure to perform up to the standards warranted in the Charter Party, Beijing withheld charter hire as expressly permitted by CLAUSE 102 of the Additional Clause to the Charter Party. Power Aff. Exhibit A2)

CLAUSE 102 expressly states provides that Thelma Shipping Co., Ltd. is responsible for all costs for underperformance of the Vessel caused by fouling so long as the Vessel does not stay in port more than 20 days. (Power Aff. Exhibit A1)

4

By reason of Thelma Shipping Co., Ltd.'s breach of the Charter Party, Beijing suffered economic losses directly attributable to the vessel's under performance including, but not limited to, increased fuel costs. Despite due demand, Thelma Shipping Co., Ltd. has failed to pay the amounts due and owing to Beijing under the Charter Party. (Power Aff. Exhibit A)

An arbitration proceeding is currently underway in London to settle the dispute between the parties. Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English law. Section 63 of the English Arbitration Act of 1996 specifically allows for recovery of these items as part of an award in favor of the prevailing party. As best as can now be estimated, Beijing expects to recover the following amounts at arbitration as the prevailing party:

| | | |
|---|---|---|
| A. | Principal Claim | $ 181,604.53 |
| B. | Estimated Interest on Claim | $ 35,525.14 |
| C. | Estimated Arbitration Costs | $50,000.00 |
| D. | Estimated Attorneys' Fees and Expenses | $150,000.00 |
| | TOTAL: | **$417,129.67** |

(Power Aff. Exhibit A)

### COUNTERSECURITY FOR ITS COUNTERCLAIM

Beijing's countersecurity request, pursuant to Supplemental Rule E(7)(a), is premised on a valid counterclaim arising out of Thelma's breach of the Charter Party at issue in Thelma's Verified Complaint and consequently should be granted in full.

**A.   Beijing Had Set Forth A Well-Pleaded Counterclaim and
       Ample Evidence in Support of its Allegations against Thelma**

5

Beijing has satisfied the statutory requirements for countersecurity. Countersecurity is governed by Supplemental Rule E(7)(a), which provides:

> When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court, for cause shown, directs otherwise. Proceedings on the original claim must be stayed until this security is given, unless the court directs otherwise.

Supp. R. E(7).

This Court recently described the purpose behind the admiralty countersecurity rule as follows:

> The point of the rule is to make sure that when parties to the same transaction assert claims against each other arising from that transaction, the parties should both be fully secured, where possible, and neither should have the additional leverage of holding security, while the other must wonder if a judgment in its favor would ever be paid.

*Pancoast Trading S.A. v. Eurograni S.R.L*, No. 07 Civ. 8581, 2008 WL 190376, at *3 (S.D.N.Y. Jan. 22, 2008).

The Court of Appeals for the Second Circuit has set forth two principles for district courts to consider when a defendant seeks countersecurity: (1) "to place the parties on an equality as regards security;" and (2) "the Rule is not intended to impose burdensome costs on a plaintiff that might prevent it from bringing suit." *Result Shipping Co., Ltd. v. Ferruzzi Trading USA Inc.*, 56 F.3d 394, 399 (2d Cir. 1995). While courts have "broad discretion" in determining whether to order the posting of countersecurity, the notion of placing the parties on equal grounds "usually favors granting countersecurity when a defendant whose property has been attached asserts non-frivolous counterclaims growing out of the same transaction...." *Result Shipping*, 56 F.3d at 399-400. In essence, the Court must weigh "the burden of posting counter-security, against the potential injustice of requiring the defendant-counterclaimant to post security without affording reciprocal protection." *Id.* at 400.

This Court recently considered two countersecurity requests under Supplemental Rule E(7) and granted both of them. In *Voyager Shipholding Corp. v. Hanjin Shipping Co., Ltd.*, No. 07 Civ. 11123, 2008 WL 400923 (S.D.N.Y. Feb. 13, 2008), the defendant sought $388,157.80 in countersecurity in connection with a counterclaim for speed and over-consumption claims over two voyages. The plaintiff challenged the countersecurity request on many grounds, the primary of which concerned the evidence (or lack thereof) submitted by the defendant in support of its counterclaim. It also submitted a declaration from an English solicitor which argued that the defendant would not be successful in the English arbitration when asserting its speed and over-consumption claims. The defendant countered by submitting its own English solicitor declaration which reached a different conclusion than that of the plaintiff's English solicitor. 2008 WL 400923, at *3.

Recognizing that an "inquiry into the merits of the claims is 'severely limited,'" this Court refused to determine which of the rivaling foreign law declarations was correct on a countersecurity application. *Id.* (quoting *Front Carriers, Ltd. v. Transfield ER Cape. Ltd.*, No. 07 Civ. 6333, 2007 WL 4115992, at *2 (S.D.N.Y. Nov. 19, 2007)). And it rejected the notion that the lack of evidence proffered at this initial inquiry stage would be fatal to the defendant's application because the defendant had submitted a "well-pleaded counterclaim." *Id.* Countersecurity was granted, though for a lesser amount than requested (as discussed, *infra*, fn.3). *Id.* at *5.

Here, Beijing has gone above and beyond the standard of proof necessary to support its counterclaim. Beijing's Verified Counterclaim contains detailed allegations concerning Thelma's breach of the Charter Party. (Power Aff. Exhibit A). These allegations are supported by documents, particularly those obtained from Thelma's London counsel, in which various admissions are made by Thelma which support Beijing's breach of Charter party claim including it's "speed claim" for the Vessel's failure to meet

the warranted speed of the Charter Party. Altogether, this proof easily satisfies Beijing's burden of showing that its counterclaim is not frivolous.

In *Pancoast, supra*, the plaintiff conceded that coutersecurity was appropriate, but questioned the amount and form the countersecurity would take. 2008 WL 190376, at *1. This Court granted countersecurity in full, without having to address the underlying merits of the case or the counterclaim alleged by the defendant.

Beijing respectfully submits that its well-pleaded verified counterclaim, supported by both declaratory and documentary support, merits the awarding of countersecurity pursuant to Supplemental Rule E(7).[1]

---

[1] Beijing respectfully requests that Thelma be provided no more than ten business days to comply with the Court's countersecurity order, should the Court rule in Beijing's favor, and that countersecurity take a form consistent with Rule 65.1.1(b) of the Local Rules for the Southern District of New York. *Pancoast, supra*, 2008 WL 190376, at *2-3. Beijing respectfully reserves it right to argue for vacatur of the attachment in its reply papers should Thelma argue in its submission that Beijing is not entitled to countersecurity. This Court may, in its discretion, vacate the attachment against Beijing if Thelma fails to provide countersecurity after an Order for countersecurity issues, *see Finecom Shipping Ltd. v. Multitrade Enterprises AG*, No. 05-6695, 2005 U.S. Dist. LEXIS 25761, *6 (S.D.N.Y. Oct. 25, 2005); *see also Voyager, supra*, 2008 WL 400923, at *5 (noting the Court's power to vacate its order of attachment on the grounds of a plaintiff's non-compliance with a countersecurity order).

## CONCLUSION

For all the foregoing reasons, Defendant respectfully requests that this Court grant the within motion in all respects and award such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      March 27, 2008

                                    Respectfully submitted,

                                    HOLLAND & KNIGHT LLP

By: _____
                                    James H. Power
                                    Lissa D. Schaupp
                                    195 Broadway
                                    New York, New York  10007
                                    (212) 513-3200
                                    james.power@hklaw.com
                                    Attorneys for Defendant
                                    *Beijing Shourong Forwarding Service Co. Ltd..*

# 5222785_v1