UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
THELMA SHIPPING CO. LTD.,                          :
                                                   :     08 Civ. 01804 (PAC)
                          Plaintiff,               :
                                                   :     ECF CASE
        - against -                                :
                                                   :
BEIJING SHOU-RONG FORWARDING SERVICE CO.           :
LTD. a/k/a BEIJING SHOURONG FORWARDING             :
SERVICE CO. LTD.,                                  :
                                                   :
                          Defendant.               :
------------------------------------------------------------------X


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR COUNTERSECURITY


LENNON, MURPHY & LENNON, LLC
*Attorneys for Plaintiff*
Thelma Shipping Co. Ltd.
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050
Facsimile (212) 490-6070

Patrick F. Lennon (PL 2062)
Nancy R. Peterson (NP 2871)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT…………………………………………………………..…..1

FACTS………………………………………………………………………………….…….3

    The Underlying Claim…………………………………………………………………3

    Plaintiff's Application for Security in New York……………………………..…..….5

ARGUMENT………………………………………………………………………….……..6

POINT I
AN AWARD OF COUNTERSECURITY WOULD BE
INAPPROPRIATE AS DEFENDANT HAS ALLEGED A
FRIVOLOUS AND/OR DEFECTIVE COUNTERCLAIM ………….….……………….…6

    A. The Standard of Law………………………………………………………….…..6

    B. Defendant has failed to allege a prima facie valid counterclaim, and in so much as it
       has been properly alleged, which is denied, it is entirely frivolous…………………..7

        1.   Countersecurity should not be awarded for frivolous claims…………..……..7

        2.   Defendant's underperformance claim is frivolous on its face ………….…...12

POINT II
DEFENDANT'S MOTION FOR COUNTERSECURITY SHOULD BE DENIED
OR THE AMOUNT REQUESTED REDUCED ON AN EQUITABLE BASIS…………...…15

POINT III
IN THE ALTERNATIVE, DEFENDANT HAS
FAILED TO REASONABLY ESTIMATE ITS DAMAGES……………………………...….16

CONCLUSION………………………………………………………………………….…...19

Plaintiff, Thelma Shipping Co. Ltd. (hereinafter "Thelma" or "Plaintiff"), by its undersigned counsel, Lennon, Murphy & Lennon, LLC, files the within Memorandum of Law in Opposition to Defendant's Motion for Countersecurity. For the reasons set forth herein, the motion of Defendant, Beijing Shou-Rong Forwarding Service Co. Ltd. a/k/a Beijing Shourong Forwarding Service Co. Ltd. ("BSF" or "Defendant"), should be denied.

## PRELIMINARY STATEMENT

In the context of a Rule E(7) application, a grant of countersecurity is far from automatic. Rule (E)(7) limits a countersecurity application to counterclaims arising from the same transaction or occurrence that is the subject of the original action. Furthermore, outside of the requirements of Rule E(7), as confirmed by the Second Circuit Court of Appeals, the Court has considerable discretion in deciding whether to order countersecurity. In exercising this discretion the Court should be guided by two principles; placing the parties on equal footing and preventing the imposition of such burdensome costs on a plaintiff that it might prevent it from bringing suit. *See Result Shipping Co. v. Ferruzzi Trading USA*, 56 F.3d 394 (2d Cir. 1995); *see also North Offshore AS v. Rolv Berg Drive AS,* 2007 U.S. Dist. LEXIS 87648, *4 (November 29, 2007).

In addition, the Court has the discretion to deny a countersecurity application for cause shown, including where the counterclaim is frivolous, speculative, and/or clearly lacking in merit or where the plaintiff is financially unable to post countersecurity. This principle has been reaffirmed recently in *North Offshore v. Rolv Berg Drive,* 2007 U.S. Dist LEXIS 87648, *7 (November 29, 2007). In *North Offshore,* Judge Stein denied an application for countersecurity under Rule E (7) stating that the defendant's claim appeared to be frivolous on its face. *North Offshore, supra.*

1

As will be more fully addressed herein, Defendant's motion for countersecurity should be denied because: (1) Defendant has failed to allege a prima facie valid maritime claim; (2) Defendant's claim for underperformance is frivolous; (3) assuming *arguendo* that Defendant has an underperformance claim, which Plaintiff denies, Defendant failed to reasonably calculate its damages therefore; and (4) equity favors the Plaintiff against the plain backdrop of the Defendant's contrived effort to obtain leverage.

Defendant is trying to "game" the system with its motion for countersecurity. Defendant would have the Court award it over $400,000.00 in countersecurity on a highly speculative and frivolous claim, the sole purpose of which is to vex or harass the Plaintiff. By raising a large (yet legally and factually unsound) counterclaim, Defendant is attempting to thwart Plaintiff's attachment.

BSF's counterclaim is the epitome of frivolous, *i.e.* it is contrary to the applicable law, speculative and otherwise totally lacking in merit. BSF simply has no claim under English law. The Charter Party provides that Plaintiff is not responsible for underperformance caused by the fouling of the hull where the Vessel was waiting idle pursuant the Charterers/Defendant's instructions. The Vessel was unquestionably idle at Defendant's instructions, and Defendant itself contends that that the fouling of the hull caused the alleged "underperformance" of which it now complains. However, Defendant does not even attempt to address this obvious contradiction. Instead, it simply states, without any support, that its claim is valid under Clause 102 of the Charter Party.

What Defendant fails to mention is that Clause 102 was solely included in the proforma version of the charter party and was subsequently amended in the Fixture Recap. It is a well-settled principle of English law that the terms of the Fixture Recap control over the terms of the

proforma charter party. *See accompanying Declaration of John Hicks, ¶6.* Thus, clause 102 is entirely inapplicable and provides no basis to justify Defendant's claim.

Furthermore, even if an underperformance claim could be asserted, Defendant has failed to set forth a reasonable estimate of its damages. As will be shown herein, Defendant has over-calculated its claim to such a degree that it was already over-secured by virtue of its withholding of hire payments due to Plaintiff before this action was initiated. It would be entirely inequitable to award Defendant countersecurity for its grossly miscalculated claims.

As Defendant has failed to meet the requirements of Rule E(7) and/or good cause has been shown, Defendant's motion for countersecurity should be denied.

## FACTS

The background facts are set forth in full in the accompanying Declaration of Plaintiff's foreign counsel, John Hicks ("Hicks Declaration") and Plaintiff's New York counsel, Nancy R. Peterson ("Peterson Declaration"). However, a short summary of the facts germane to this application is provided below.

### The Underlying Claim

Pursuant to a charter party dated November 9, 2007, Plaintiff chartered the vessel "MANASOTA" ("Vessel") to the Defendant to perform a ballast voyage from the Far East to Itaguai, Brazil to load a cargo of bulk iron ore and then carry that cargo back to China. *See Hicks Declaration, ¶4.* As is typical in the shipping world, the Charter Party is evidenced by two documents: (1) the fixture "recap" agreed to by the parties; and (2) the unsigned pro forma charter party containing the "boiler plate" language of the charter, to be adjusted/ amended/revised by the Fixture Recap.

3

Here, the Fixture Recap expressly provides "WHERE THE VESSEL REMAINS AT ANCHORAGE, IN PORT OR IDLE FOR AN EXTENDED PERIOD IN COMPLIANCE WITH CHRTRS' ORDER/INSTRUCTIONS, AND THIS CAUSES FOULING OF THE HULL OR UNDERWATER PARTS, OWNERS SHALL NOT BE RESPONSIBLE FOR SUCH FOULING OR ANY VESSEL UNDERPERFORMANCE CAUSED BY SUCH FOULING. THE COST OF CLEANING AND PAINTING THE HULL OR UNDERWATER PARTS, AND THE TIME SPENT DOING SO, SHALL BE FOR THE CHARTERERS' ACCOUNT." *See Fixture Recap, p. 4 annexed to Verified Complaint as Exhibit "1."* This provision in the Fixture Recap repeats clause 102 of the proforma charter party, but in doing so deliberately <u>excludes</u> the definition of "extended period" which in the proforma is stated to mean 20 days. *Hicks Declaration, ¶8.*

Soon after the Plaintiff took redelivery of the Vessel from its prior charter, the Vessel took bunkers at Singapore on November 9-10, 2007, at which time the underwater areas of the Vessel were cleaned so that on sailing all underwater areas were free of growth. *Hicks Declaration, ¶9.* The Vessel then ballasted across the Indian Ocean and South Atlantic to Brazil where she was obliged to wait in a warm water port, pursuant to the Defendant's instructions, for some 18 days in order to load the cargo. *Hicks Declaration, ¶10.*

The Defendant does not deny that the Vessel was delayed in a warm water port for 18 days which caused the fouling of the hull. It further admits that the fouling caused the alleged underperformance. *See Defendant's Memorandum of Law in Support of Motion for Countersecurity, p. 4.*

From the above facts alone, it is clear that Defendant has no actual claim. Notably, Defendant has yet to assert the underperformance claim in the ongoing arbitration between the

4

parties.  We submit that this is just further evidence that Defendant's claim lacks substance and has been asserted in this proceeding solely as retaliation for Plaintiff's attachment.

### Plaintiff's Application for Security in New York

During the course of the charter, disputes arose between the parties regarding Defendant's failure to pay Plaintiff all of the amounts due and owing under the charter party dated November 9, 2007.  As a result, Plaintiff sustained damages in the principal amount of $962,811.60, exclusive of interest, arbitration costs, and attorneys' fees.

On February 22, 2008, in order to obtain jurisdiction over Defendant and to obtain security for its claims, Plaintiff commenced this action and applied for an Ex Parte Order of Maritime Attachment Garnishment against the Defendant's property within this District. *Peterson Declaration, ¶3.*  Plaintiff's application was granted and an Ex-Parte Order and accompanying Writ of Attachment were issued in the amount of $1,351,155.04. *Peterson Declaration, ¶4.*

Plaintiff served the Ex Parte Order(s) and Process of Maritime Attachment on garnishee banks within this District believed to be holding Defendant's funds, including, *inter alia*, Bank of New York and Citibank.  And, pursuant to the Ex-Parte Order and Process of Maritime Attachment, Bank of New York and Citibank restrained approximately $1,351,155.04 of Defendant's property. *Peterson Declaration, ¶6.*

On April 10, 2008, Defendant made the instant application for countersecurity. Defendant has requested security for its claim that the vessel allegedly underperformed. As will be shown herein, Defendant's counterclaim is frivolous and Defendant's motion for countersecurity should therefore be denied.

**ARGUMENT**

**POINT I**

**AN AWARD OF COUNTERSECURITY WOULD BE
INAPPROPRIATE AS DEFENDANT HAS ALLEGED A
FRIVOLOUS AND/OR DEFECTIVE COUNTERCLAIM**

**A. The Standard of Law**

The Language of Rule (E)(7) is not mandatory.

Rule E(7)(a) provides in relevant part:

> When a who person has given security for damages in the original action asserts a
> counter-claim that arises from the same transaction or occurrence that is the
> subject of the original action, a plaintiff for whose benefit the security has been
> given must give security for damages demanded in the counter-claim unless the
> court for cause shown, directs otherwise.

Fed. R. Civ. P. Supp. E.(7)(a).

While this rule's language makes it appear that the posting of countersecurity is

mandatory whenever its conditions are satisfied, "the final clause of the quoted language makes

clear that the trial court possesses broad discretion in deciding whether to order counter-security

under such conditions." *Result Shipping Co. v. Ferruzzi Trading USA Inc.* 56 F.3d 394, 399 (2d

Cir. 1995)(citing *Afram Lines Int'l, Inc. v. M/V CAPETAN YIANNIS*, 905 F.2d 347, 349 (11th Cir.

1990); *Titan Navigation Inc., v. Timsco, Inc.*, 808 F.2d 400, 403 (5th Cir. 1987); 7A James W.

Moore Et Al., Moore's Federal Practice ¶E.15, at E-756 (2d ed. 1995)).

While the purpose of Rule E(7) is to permit a counterclaimant to likewise receive security

in appropriate instances, countersecurity under Rule E(7) is not appropriate where a defendant

asserts a frivolous counterclaim. *See e.g., Result Shipping*, 56 F.3d at 400; *see also Tital

Navigation*, 808 F. 2d at 404; *Trinidad Foundry & Fabricating, Ltd. v. M/V KAS CAMILLA*, 776

6

F. Supp. 1555, 1558 (S.D. Fla. 1991). The posting of countersecurity likewise is not appropriate where the plaintiff is financially unable to post countersecurity. *Result Shipping*, 56 F.3d at 400 (citing *Titan Navigation*, 808 F.2d at 403-405; also citing *Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.*, 23 U.S. 629, 632-36 (1924)). In each case, the court is to use its discretion to determine, based on the totality of circumstances, whether the posing of countersecurity should be ordered. *Result Shipping*, 56 F. 3d at 400 (quoting *Titan Navigation*, 808 F.2d at 404; citing *Afram Lines*, 905 F.2d at 349-50).

As shown by the Plaintiff's supporting declaration and as discussed below, Defendant's countersecurity application should be denied because Defendant's "counterclaim" is a manufactured artifice designed to place Defendant at a tactical advantage, which is the very situation warned against in numerous decisions. Where a plaintiff must choose between maintaining security for its claims or having to surrender such security in the face of unjustified counterclaims, courts routinely have refused to grant a defendant's demand for countersecurity.

The situation here is even more acute than in a typical case because Defendant BSF has already obtained security from Plaintiff for all of its alleged claims by deduction of hire payments due and owing to Plaintiff. Moreover, the baseless nature of Defendant's claim, which even at face value lacks any credibility and appears clearly to have been raised in retaliation for Plaintiff's attachment, militates heavily against granting Defendant's motion for countersecurity.

**B. Defendant has failed to allege a prima facie valid counterclaim, and in so much as it has been properly alleged, which is denied, it is entirely frivolous**

**1. Countersecurity should not be awarded for frivolous claims**

Defendant has requested security for an alleged underperformance claim. This claim is frivolous, general, speculative, and clearly lacking merit.

Rule E(7)(a) should not be permitted to be employed like a bludgeon to eliminate the Plaintiff's right to security for well-founded claims through the granting of countersecurity on a defendant's dubious counterclaim:

> [T]he court should not require countersecurity where the counterclaim is frivolous or so lacking in merit that the court can only conclude that the counterclaim was advanced solely to secure a negotiating advantage over the complainant.

*Titan Navigation*, 808 F.2d at 404. Courts in a variety of circumstances have refused to order the posting of countersecurity where a counterclaim is frivolous, lacking in merit, or too speculative to be entitled to the normal presumption that countersecurity is appropriate. Several representative cases, discussed below, demonstrate how courts have addressed this issue.

In *Ythan Ltd. v. Americas Bulk Transport Ltd.*, 336 F. Supp. 2d 305 (S.D.N.Y. 2004), the defendant sought $4.4 million in countersecurity on a cargo indemnity claim. *Id.* at 39. In denying that portion of the defendant's countersecurity request, the court ruled that the "highly contingent" nature of the defendant's claim made posting of such countersecurity inappropriate.

In *Trinidad Foundry & Fabricating, Ltd. v. M/V KAS CAMILLA*, 776 F. Supp. 1555 (S.D. Fla. 1991), the plaintiff arrested the defendant's vessel in connection with its claims for repairs and necessaries. *Id.* at 1556. The defendant shipowner counterclaimed for damage to the vessel due to the plaintiff's alleged negligence, breach of warranty, and breach of contract and moved for countersecurity under Rule E(7). *Id.* at 1558. In its motion, the defendant contended that the plain language of Rule E(7) require the plaintiff to post countersecurity. *Id.* The court disagreed and, after examining the facts surrounding defendant's purported "counterclaim" refused to order the posting of countersecurity:

> [Defendant] argues that the plain language of Rule E(7) requires Plaintiff to post a bond or other security on the Counterclaims filed in this action. The Court is not persuaded by Defendant's reasoning in this regard. Rule E(7) mandates the

8

posting of countersecurity in this instant unless the Court, for cause shown, directs otherwise. In the present case, Defendant's authorized representative executed Plaintiff's Notice of Repairs Satisfactorily Completed, confirming that the repairs performed by Plaintiff to the Vessel has been satisfactorily completed. **The Undersigned believes that this fact alone indicates that Defendants' Counterclaims may be frivolous and constitutes sufficient cause shown to remove the presumption of countersecurity dictated by Rule E(7).** The Court would like to note parenthetically that this preliminary determination of the nature of Defendant's Counterclaims is germane only to the instant determination of the posting of countersecurity. It in no way speaks to the merits of Defendant's counterclaims and has no res judicata or collateral estoppel effect.

*Id. (emphasis added).*

In *Expert Diesel, Inc. v. Yacht FISHIN FOOL*, 627 F. Supp. 432 (S.D. Fla. 1986), the court refused to grant the defendant's motion for countersecurity on counterclaims similar to those asserted by the defendant in *KAS CAMILLA. See id.* In so holding, it stated "the court is reluctant to compel Plaintiff to post a bond in light of Defendant's damage claims of a general rather than a precisely detailed, nature." *Id.* at 433.

In *U.S. Maritime Services Inc. v. Trade Ventures Inc.*, No. CIV A. 98-0499, 1998 U.S. Dist. LEXIS 10608, (E.D. La. July 8, 1998), the defendant counterclaimed for damages arising over a lost charter party. *Id. at* *6. In denying the defendant's motion for countersecurity, the court ruled that the counterclaim was too speculative and insufficiently supported to justify an order directing the posting of counter-security.

The defendant's claim for the alleged lost charter is too speculative to sustain an order for countersecurity. Unlike plaintiff's claim which is based on past events reasonably able to be ascertained and quantified, defendant's losses due to a 'road not taken' cannot be so readily ascertained and quantified. **The Baldwin affidavit is insufficient by itself to determine what the defendants estimated actual loss is after expenses and other items are deducted, even assuming the voyage would have occurred but for the plaintiff's alleged broken agreement.**

*Id.* (emphasis added).

9

Here, Defendant has offered even less substance than the defendants in the cases cited above. Defendant summarily asserts via attorney affidavit that it has a claim for over $400,000.00 dollars, but is does not produce any witness statements, or other evidence or proof that its claim has any basis in fact (or law). As the cases cited above make clear, general claims or unsupported allegations are not given a presumption of validity as a well-supported and documented claim.

*The claim has not even been asserted in the substantive proceeding between the parties,* *i.e.* the London arbitration proceeding. Accordingly, even assuming that Defendant's application for countersecurity is facially proper, Defendant's claims are far too speculative to warrant an order directing the posting of countersecurity.

As will shown at Point I(B)(2), below, Defendant's claim for underperformance is based on a clause that was expressly deleted from the parties final agreement, i.e. the Fixture Recap. And, as set forth in the accompanying Declaration of John Hicks, Plaintiff's English solicitor, Defendant does not have a prima facie valid claim under English law. *See Hicks Declaration,* *¶18.* Thus, Defendant has alleged a <u>facially deficient and/or frivolous counterclaim.</u> In addition, Defendant's motion papers further fail to provide any documentation or affidavits to substantiate its allegations. Accordingly, Defendant's underperformance claim is frivolous under English law and should be seen for what it is, *i.e.* retaliation for the Plaintiff having attached Defendant's property in this proceeding.

Other court's considering issues such as those presented by Defendant's motion for countersecurity have concluded that it is inappropriate to award highly speculative damages, even when under a certain sets of facts such damages could be theoretically awarded on the underlying action. *Sea Transp. Contrs., Ltd. v. Indus. Chemiques Du Sengal*, 411 F. Supp. 2d

386, 396 (S.D.N.Y. 2006)(reducing security sought as even though contract could theoretically run interminably, notwithstanding the merits of the claim under English law and finding that this was not enough to support a claim for damages). In *Sea Transp. Contractors,* the plaintiff sought security for a contract, which if not breached, could have been renewed interminably. Thus, as the contract could theoretically have been renewed forever, plaintiff requested security for loss of profits over 30 years! While this was theoretically possible, the court found it highly improbable. As the security sought was in respect of damages that were highly speculative and remote, the court denied the claimant's motion for security.

Here, Defendant's claim for underperformance is similarly speculative. In order to succeed on its claim, Defendant would have to prove that the terms of the proforma charter party control over the terms of the Fixture Recap, a statement which it has not even alleged in its counterclaim. For this reason alone, the Court can and should exercise its discretion to deny Defendant's motion for countersecurity on the underperformance claim.

However, there is another reason to deny Defendant's motion for countersecurity on the underperformance claim. Particularly, if the Court were to permit Defendant to utilize Supplemental Admiralty Rule E(7) as a shield and a sword, then every time a breach of contract was alleged by a claimant, the respondent would raise a frivolous and concocted counterclaim. The initial claim made would be neutralized by the farfetched and unsupported counterclaim asserted. Defendants should not be permitted to seek countersecurity for whatever dubious counterclaims they can concoct, especially where they have already obtained security against the Plaintiff for their claims, as is the case here.

For these and the reasons set forth below, the Court should decline to order Plaintiff to post countersecurity for Defendant's frivolous counterclaims.

11

### 2. Defendant's underperformance claim is frivolous on its face

Defendant's counterclaim hinges on clause 102 of the proforma charter party, which was expressly overridden by the Fixture Recap.  Clause 102 of the proforma charter party provides that a delay at the loading port must exceed 20 days before Charterers become responsible for fouling.  As the Vessel was not idle for 20 days, (but only 18), Defendant argues that Plaintiff is responsible for the underperformance.  However, in doing so, Defendant has failed to take account of the Fixture Recap (the specifically negotiated provisions of the parties' contract) which deleted that 20 days minimum criteria and merely provides that where the Vessel remains at anchorage for an extended period in compliance with Charterers' orders and this causes fouling, Owners shall not be responsible for the fouling, underperformance or costs of the cleaning.  It is trite law that the terms of the Recap prevail over the terms of the proforma charter party.  *Hicks Declaration, ¶6 citing* Glyn v Margetson (1893) AC 351 at p 358  - House of Lords; The Brabant (1965) 2LLR 552 at p 552-554; and The Starsin (2000)1 LLR 85 at p 89-90.

Surveys confirm that the fouling took place while the Vessel was loading cargo at Brazil. Defendant does not allege otherwise.  Thus, Defendant's claim for underperformance is precluded by the precise wording of the Charter Party.

Moreover, it is well-established under English law, that where bottom growth accumulates by reason of a vessel following charterers' orders and reduces the Vessel's performance that this shall not constitute a defect in the vessel entitling Charterers to make a deduction in hire.  *See Hicks Declaration, ¶16.*

Defendant's underperformance claim does not stand up to even mild scrutiny and by any measure fails for a total lack of support.  The uncontroverted facts of this matter reveal that the Fixture Recap precludes Defendant's claim.

Rather than admit that it has no support for its claim, Defendant attempts to distract the Court with references to Clause 1 of the charter party. Any reliance on Clause 1 is misplaced at best.

Defendant's argument under Clause 1, namely that Plaintiff failed to maintain the ship by allowing bottom growth to accumulate while the vessel was delayed at Itaguai, also has no basis. *Hicks Declaration, ¶19.* The Vessel was following Defendant's orders and instructions by waiting at a warm water port for an extended period of time and the accumulation of bottom growth in such circumstances is inevitable. *Hicks Declaration, ¶20.*

Plaintiff took adequate steps to prevent the accumulation of marine growth. *Hicks Declaration, ¶23.* The Vessel, being of relatively new construction, had anti-fouling paint applied to her underwater areas which was still well within warranty. *Id.* The accumulation of marine growth where a vessel is delayed, particularly in a warm water port, is not a matter dealt with by routine maintenance of the vessel. To remove marine growth the vessel has to be stopped and taken out of service and cleaned. *Hicks Declaration, ¶¶24-25..*

In circumstances where the need for the cleaning arises as a direct result of the charterers' (Defendant's) orders, as was the case here, either the Vessel should not be placed off-hire in the first place or alternatively Plaintiff /Owner is entitled to an indemnity for the full extent of any loss arising. *Hicks Declaration, ¶26.*

There are no practical steps to prevent the accumulation of growth that can be taken by Plaintiff/Owners in such circumstances. *Hicks Declaration, ¶21.* The Defendant has not even alleged in what respect the Plaintiff failed to comply with Clause 1. *Hicks Declaration, ¶22.* Clause 1 merely requires Plaintiff to take reasonable steps within a reasonable time to rectify any inefficiency. *Id.*

13

Where the counter-claim alleged does not square with the applicable law and/or facts, it should be deemed frivolous and dismissed, as shown in the following excerpt from *North Offshore AS v. Rolv Berg Drive:*

> "The premise that countersecurity will not be required on the basis of frivolous counterclaims is a sound one," *Finecom Shipping*, 2005 U.S. Dist. LEXIS 25761, at *3-4, and a court "should not require countersecurity where the counterclaim is frivolous or so lacking in merit that the court can only conclude that the counterclaim was advanced solely to secure a negotiating advantage over the complainant," *Titan Navigation, Inc. v. Timsco, Inc.,* 808 F.2d 400, 404 (5th Cir. 1987). Mindful that the "ability to understand the merits of a dispute at an early stage is limited," *Finecom Shipping*, 2005 U.S. Dist. LEXIS 25761, at *4, the Court nonetheless finds that [claimant] RBD's counterclaim is highly speculative -- relating to its alleged lost profits from the failure to obtain continued use of the ALDOMA -- and RBD has provided no rebuttal to North Offshore's position that the claim is without merit. Those deficiencies weigh against directing North Offshore to post countersecurity. *See Ythan Ltd. v. Americas Bulk Transport Ltd.,* 336 F. Supp. 2d 305, 309 (S.D.N.Y. 2004) (rejecting motion for countersecurity where the counterclaim was "highly contingent"); *U.S. Maritime Services, Inc. v. Trade Ventures, Inc.,* No. 98-0499 Section "C", 1998 U.S. Dist. LEXIS 10608, at *6 (E.D. La. July 8, 1998) (denying countersecurity because defendants' counterclaim was too speculative -- "[u]nlike plaintiff's claim which is based on past events reasonably due to be ascertained and quantified, defendants' losses due to a 'road not taken' cannot be so readily ascertained and quantified").

2007 U.S. Dist LEXIS 87648, *8-9.

Like in *North Offshore*, the deficiencies in Defendant's claim weigh against the Court directing Plaintiff to post countersecurity. The Charter Party, English law, and the facts all indicate that Defendant has absolutely no basis for an underperformance claim in these circumstances.

Therefore, because Defendant's counterclaim is facially deficient and otherwise lacking in merit, it should be deemed frivolous and the Court should decline to grant countersecurity.

## POINT II

### DEFENDANT'S MOTION FOR COUNTERSECURITY SHOULD BE DENIED OR THE AMOUNT REQUESTED REDUCED ON AN EQUITABLE BASIS

This Court is empowered to deny and/or reduce the countersecurity requested by Defendant on an equitable basis. "The inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge sitting as an admiralty judge . . . ." *Greenwich Marine, Inc. v. S.S. Alexandra*, 339 F.2d 901, 905 (2d Cir. 1965). By way of further legal authority, notwithstanding that in *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434 (2d Cir. 2006) the exact scope of the district court's vacatur power was not before the Second Circuit, the Court stated nevertheless that given the exceptional remedy of maritime attachments, a district court has the inherent authority to vacate an abusive or otherwise unfair attachment. *See id.* at 442-445. The Court so held in the context of praising Judge Leval's holding in *Integrated Container Serv., Inc. v. Starlines Container Shipping, Ltd.,* 476 F. Supp. 119 (S.D.N.Y. 1979). "Then-District Judge Leval astutely noted, however, the possibility of abuse by the attaching party in some circumstances." *Aqua Stoli,* 460 F.3d at 442. In *Integrated Container*, Judge Leval held that where there is an "abusive use of the maritime attachment remedy...the courts may easily remedy the situation by exercising discretion to set aside an unfair attachment." *Integrated Container*, 476 F.Supp. at 124. Based on the facts of *Integrated Container*, an "across the river case," Judge Leval held that the attachment was not unfair because "there can be no doubt that the plaintiffs' need for security is real, [and] that their quest for attachment is not a tactic of harassment." *Id.*; *see also Central Hudson Gas and Elec. Corp. v. Empresa Naviera Santa, SA*, 845 F.Supp. 150, 153 (S.D.N.Y. 1994)("The Rule was not abused, inasmuch as there was a substantial risk that [plaintiff] would not be able to locate sufficient assets to satisfy its claims, which in turn were not frivolous."). By

logical extension, this authority would also apply to any abusive and or otherwise unfair application for security, including that for countersecurity.

As discussed in "Point 1," Defendant's counterclaim is so at odds with the applicable law and facts that it would be inequitable to grant security therefore.    Therefore, Defendant's Motion for Countersecurity should be denied in its entirety or, as endorsed by Judge Preska in *Transportes Navieros y Terrestes v. Fairmount Heavy Transp. N.V.*, 07 Civ. 3076 (LAP), 2007 WL 1989309, at \*4 (S.D.N.Y. July 6, 2007, reduced to a nominal level.

Where the claim asserted does not pass the "smell" test, the Court should not give it further credence by awarding security for that claim.

## POINT III

### IN THE ALTERNATIVE, DEFENDANT HAS FAILED TO REASONABLY ESTIMATE ITS DAMAGES

All parties requesting security in an attachment action must reasonably estimate their damages. If their damages do not comport with the facts, the Court has the power to deny security for that portion of the claim. In *Flame Maritime Ltd. v. Hassan Ali Rice Export Co.*, 07 Civ. 4426 (WHP) 2007 U.S. Dist. LEXIS 64470, \*5 (S.D.N.Y. August 31, 2007), the Court held as follows:

> "Because pre-judgment attachments are usually based upon reasonable estimates and not precise facts, parties often attach amounts which are later deemed excessive in light of changes in circumstances." *Dongbu Express Co., Ltd. v. Navios Corp.*, 944 F. Supp. 235, 237 (S.D.N.Y. 1996). As such, "a reduction in security is 'freely granted upon a showing that the [attachment] is excessive.'" *Dongbu*, 944 F. Supp. at 237 (quoting 7A James W. Moore et al., Moore's Federal Practice P E14 (2d ed. 1996)); *see also* Fed. R. Civ. P. Supp. Rule E(6)("Whenever security is taken, the court may, on motion and hearing, for good cause shown reduce the amount of security given."); *Mardas*, 2007 WL 2229058, at \*3 (same); *Transportes Navieros y Terrestes v. Fairmount Heavy Transp. N.V.*, 07 Civ. 3076 (LAP), 2007 WL 1989309, at \*4 (S.D.N.Y. July 6, 2007)(same).

*Flame Maritime Ltd.*, 07 Civ. 4426 (WHP), 2007 U.S. Dist. LEXIS 64470 at \*5.

The Court may also reduce the attachment where the amount of security requested, although possibly recoverable in the underlying action, runs contrary to the contract and/or facts upon which the damages are based. Thus, when finding a defendant has shown "good cause" to reduce the attachment, the court is not required to take a position on the substantive merits of the case, or as to the recovery available under applicable foreign law. *See Sea Transport Contractors, Ltd. v. Industries Chemiques Du Senegal*, 411 F. Supp. 2d at 396; *see also, Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers*, 2005 U.S. Dist LEXIS 224, *5 (S.D.N.Y. 2005)(where the plaintiff's estimate of damages has been challenged, the court may use its discretion to apply a reasonable estimate of those damages).

As held by Judge Scheindlin, where a "[plaintiff's] claims cannot be deemed frivolous, they should be reduced to account for estimated savings" and that "in an attachment proceeding, the plaintiff need not prove its damages with exactitude" but "the court must be satisfied that plaintiff's claims are not frivolous." *Dongbu Express Co. Ltd. v. Navios Corp.*, 944 F.Supp. 235, 237-238 (S.D.N.Y. 1996).

Here, even assuming that the underperformance claim has any merit, which is denied, the calculations used by Defendant to determine its damages are incorrect. Therefore, at the very least, if the Court does not deny the motion for countersecurity on the basis that Defendant's claim is frivolous, it should refuse to order countersecurity because as a matter of quantum, the Defendant has no remaining unsecured counterclaim in any event. That is, Defendant has arithmetically miscalculated its claim and in reality it is currently already fully secured (by way of earlier deduction from hire). *See Letter annexed to Hicks Declaration as Exhibit "1."*

In making its underperformance claim, Defendant posits that the Vessel did not go as fast as warranted under the charter party (determined by time it took to cover the actual distance

17

traveled). Thus, the distance actually traveled is essential to calculating an underperformance claim. Defendant has a report (WNI report) recording the distances actually steamed by the Vessel during the Court of the charter. *See WNI report annexed to the Hicks Declaration as Exhibit "2."* However, it does not use the correct distance traveled when determining its damages. *Hicks Declaration, ¶32.*

The distance steamed by the Vessel from Itaguai to Singapore was 9,074 miles and Singapore to Majishan was 2,160 miles, a total of 11,234 miles; 241 miles more than Defendant's estimate. *Hicks Declaration, ¶33.*

Therefore, even assuming *arguendo* that the Vessel would make a speed of 13.5 knots (the warrented speed) in all weather and current conditions (which is clearly not correct in any event), Defendant has over-calculated its claim. *Hicks Declaration, ¶35.* The steaming time allowed under the charter party for 11,234 miles at 13.5 knots is 34.672839 days. The time actually used by the Vessel was 39.75 days. *Id.*

Defendant also made an error regarding when the Vessel left Singapore. The Vessel sailed at 1500 GMT, not 1400 GMT. Therefore the time "lost" (assuming that the claim exists in the first place, which is denied) would be 5.077161 days, not 5.862655 days. *Hicks Declaration, ¶36.* Taking this into account, the deduction from hire, absent proper assessment of the Vessel's performance given bad weather, adverse currents, etc, should thus be $888,503.17 gross or $855,184.30 net of credit which should be made for 3.75% commission. *Id.*

Defendant has already deducted $1,025,964.63 from the hire owned to Plaintiff, an over-deduction of $170,780.33. *Hicks Declaration, ¶37.*

Furthermore, although Defendant deducted the time spent maneuvering into and bunkering at Singapore in its calculation of the steaming time used, it has failed to take account of bunker

consumption through this time. Bunker consumption through this time was recorded to be 32.8 mt IFO (US $16,498.40) and 12.3 mt MDO (US $9,102.00). Thus, applying the bunkers consumed during this time, which are for Defendant's account, Defendant over-deducted another $25,600.40 from the hire owed to Plaintiff. *Hicks Declaration, ¶38.*

Finally, Defendant's damage calculation is inherently unreasonable because it does not take account of the adverse weather conditions experienced during the voyage from Itaguai to Singapore and Majishan. When there are adverse weather conditions, the speed warranted in the charter party does not apply. The WNI report sets out the many instances of weather exceeding Beaufort 4 and adverse current during the course of the charter. *See Exhibit "2" to Hicks Declaration.* All of Defendant's calculations are based on the concept that the Vessel experienced solely good weather and sea conditions throughout the entire voyage, a fact which is demonstrably false. *Hicks Declaration, ¶39.* Defendant does not have a claim for underperformance under the Charter Party. However, even if the claim did exist, as shown above, it is already over-secured for that claim.

Therefore, if the Counterclaim is not found frivolous, countersecurity should be denied in any event as Defendant has failed to reasonably calculate its damages, and is already over-secured.

## CONCLUSION

As Defendant's counterclaim do not meet the requirements of Rule E(7) and is otherwise frivolous, general, speculative, inequitable and/or clearly lacking merit, this Court should deny Defendant's motion for countersecurity.

19

Dated: April 28, 2008
       Southport, CT

The Plaintiff,
THELMA SHIPPING CO. LTD.

By: _____
    Patrick F. Lennon (PL 2162)
    Nancy R. Peterson (NP 2871)
    LENNON, MURPHY & LENNON, LLC
    The Gray Bar Building
    420 Lexington Ave., Suite 300
    New York, NY 10170
    (212) 490-6050 - phone
    (212) 490-6070 - fax

20

## AFFIRMATION OF SERVICE

I hereby certify that on April 28, 2008, a copy of the foregoing Memorandum of Law was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

By: _____
Nancy R. Peterson