James H. Power
Lissa D. Schaupp
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200

ATTORNEYS FOR DEFENDANT
BEIJING SHOURONG FORWARDING SERVICE CO. LTD.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THELMA SHIPPING CO. LTD.,

                              Plaintiff,

          -against-

BEIJING SHOU-RONG FORWARDING SERVICE
CO. LTD. a/k/a BEJING SHOURONG
FORWARDING SERVICE CO. LTD.
                              Defendant.

08 Civ.1804 (PAC)

**DECLARATION OF
YU QIANG IN
SUPPORT OF DEFENDANT'S
MOTION FOR COUNTER-
SECURITY PURSUANT TO
SUPPLEMENTAL RULE E(7)**

I, Yu Qiang, of Room 2305-2307, 23F, Beijing Jinyu Plaza, 100 Xisanhuan BeiLu, Haidian District, Beijing, China, a resident of the People's Republic of China, declare under the penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. §1746 that the following is true and correct:

1.    I am employed by defendant Beijing Shourong Forwarding Service Co. Ltd. ("Beijing"), in the capacity of Manager of Iron Ore Shipping Department and am responsible for chartering and daily operation management.  I submit this declaration in support of Bejing's motion for counter-security against Plaintiff Thelma Shipping Co. Ltd. (hereinafter "Thelma").

1

## THE MANASOTA CHARTER AND BEIJING'S DAMAGES

2.    On behalf of Beijing, I was responsible for negotiating and fixing the charter, dated November 9, 2007 between Thelma and Beijing ("Charter") in which Thelma time-chartered the motor vessel MANASOTA ("Vessel").

3.    The negotiations were conducted between myself and Luc Van Mael of LSS, Thelma's broker.

4.    As is customary, during the course of pre-fixture negotiations, Mr. Van Mael sent me the *pro forma* charter party, a standard New York Produce Exchange form, the basis of which would be used to confirm the fixture.

5.    The specific *pro forma* provided was a charter party for the M/V BRISBANE, dated September 26, 2007 (*"Pro Forma"*).

6.    The *Pro Forma* contained additional Clause 102 regarding excessive delays in port with which I am accustomed. Specifically, Clause 102 states:

> Where the vessel remains at anchorage, in port or idle for an extended period (means excess 20 days) in compliance with Charterer's orders/instructions, and this causes fouling of the hull or underwater parts, Owners shall not be responsible for such fouling or any vessel under-performance cause by such fouling. The cost of cleaning the hull or underwater parts, and the time spent doing so, shall be for Charterer's account.

7.    During pre-fixture negotiations with Mr. Van Mael, we discussed the main terms of the Charter, but did not discuss the specific meaning of "extended period."

2

8.      On or about November 9, 2007, Mr. Van Mael sent me via e-mail the fixture The Charter included the standard New York Produce Exchange charter party terms.

9.      The fixture received from Mr. Van Mael contained the exact wording of Clause 102, but omitted the parenthetical "(means excess 20 days)" defining the meaning of "extended period."  However, I was under the understanding that "extended period" need not be defined in the fixture recap because it was defined in the *Pro Forma.*

10.     Furthermore, the fixture recap specifically states that the Charter is based on the M/V BRISBANE *Pro Forma* "WITH LOGICAL AMENDMENTS AS PER MAIN TERMS AGREED ONLY."  Mr. Van Mael and myself did not agree to delete "(means excess 20 days)" from the *Pro Forma* for this would have rendered the meaning of "extended period" ambiguous. It could just as easily mean in excess of 20 days as it could mean less than 20 days without the parenthetical contained in Clause 102.

11.     I understand from operations that on or about November 6, 2007, the Vessel was delivered to Beijing in or around the waters off Singapore.  Shortly thereafter the Vessel performed a ballast voyage to Itaguai, Brazil where it loaded a cargo of iron ore.

12.     The Vessel arrived in Itaguai, Brazil on December 5, 2007, but could not immediately unload its cargo due to port delays and congestion.

13.     The Vessel completed unloading on December 23, 2007, and was thus in Itaguai for a total of 18 days during which time substantial hull growth accumulated on the Vessel.

14.     The Vessel sailed directly from Itaguai, Brazil to Singapore arriving on January 25, 2008.  As a result of the Vessel's failure to perform up to the standards warranted in the Charter due to hull growth, Beijing withheld charter hire as expressly provided in Additional Clause 102 of the Charter.

15.     The Vessel was redelivered to Thelma on December 2, 2008.

16.     After redelivery of the Vessel, Beijing calculated its claim against Thelma for underperformance of the Vessel to be US$1,025,964.63, but at that time had not yet received sufficient documentation from Thelma to calculate the claim precisely.

17.     Upon receiving additional information from Thelma, Beijing recalculated its underperformance claim against Thelma, and determined that it had in fact overpaid Thelma in the amount of US$181,604.53.  A true and correct copy of the revised Hire Statement showing this overpayment is attached hereto as Exhibit 1.


[The remainder of this page is intentionally left blank]

Executed this _5th__ day of May, 2008 at Beijing, P.R. China

Yu Qiang

# EXHIBIT 1



# 北京首荣货运代理有限公司

北京海淀区西三环北路100号金玉大厦2305-2307# 100037

Tel. +86-10-8855 7888 / 88557881/2/3/5/6/7 Fax. +86-10-6848 7301

e-mail:chartering@shourong.com

**ISO-9002**

## Hire Statement of Account

| | | | | |
|---|---|---|---|---|
| Vessel: | Mv MANASOTA | | Date: | 1/3/2008 |
| Owners: | THELMA SHIPPING CO.LTD. | | Ref: | 9th hire |
| Charterers: | Beijing Shou-Rong Forwarding Service Co., Ltd | | C/P Date: | |
| Delivery: | 11/6/2007 5:00 | | Remark: | |
| Redelivery: | | | Currency: | in USD |

| Descriptions | | | | | CHTRS' | OWRS' |
|---|---|---|---|---|---|---|
| Hire form: | 11/6/2007 5:00 GMT | | to: | 2/12/2008 10:00 GMT | | |
| Hire days | | 98.208333 @ | | 175,000 /day | | 17,186,458.33 |
| Bunker on Delivery | | | | | | |
| IFO | MTS | 3862.778 @ | | 503 /mt | | 1,942,977.33 |
| MDO | MTS | 193 @ | | 740 /mt | | 142,820.00 |
| Bunker on Redelivery | | | | | | |
| IFO MTS | MTS | 1966 @ | | 503 /mt | 988,898.00 | |
| MDO MTS | MTS | 132.129 @ | | 740 /mt | 97,775.46 | |
| C/E/V | days | 98.208333 @ | | 1500 PM | | 4,827.81 |
| ILOHC | | | | | | 6,000.00 |
| WNI CHARGE | | | | | 300.00 | |
| Less total raised offhire/speed claim | | | | | 1,025,964.63 | |
| less total raised offhire CVE/speed claim | | | | | 286.68 | |
| Address Commission | | | 3.75% | | 644,492.19 | 38,473.67 |
| less total IFO bunkers offhire/speed claim | | | | | 142,365.10 | |
| less total MDO bunkers offhire/speed claim | | | | | 10,368.14 | |
| less owner disbursement items | | | | | 3,056.15 | |
| Hire Paid | | | | | | |
| 1st hire | | | | | 4,613,109.83 | |
| 2nd hire | | | | | 2,527,660.00 | |
| 3rd hire | | | | | 2,527,312.50 | |
| 4th hire | | | | | 2,527,312.50 | |
| 5th hire | | | | | 2,499,740.42 | |
| 6th hire | | | | | 1,220,509.13 | |
| 7th hire | | | | | 674,010.95 | |
| Sub-Total: | | | | | 19,503,161.68 | 19,321,557.15 |
| Amount in Owrs Favour: | | | | | **-181,604.53** | |
| Grand-Total: | | | | | 19,321,557.15 | 19,321,557.15 |
| | | | | | | E.&O.E. |

pls arrange remittance to owners bank:

HUA XIA BANK XIZHIMEN BRANCH

Beneficiary: BEIJING SHOU-RONG FORWARDING SERVICE CO., LTD

A/C NO. 4063200002839300000125

Intermediate Bank: Jpmorgan Chase Bank, New York

Swift BIC: CHASUS33

A/C No. 400231182

Account with bank: Hua Xia Bank, H.O.

Swift BIC: HXBKCNBJXXX

Beneficiary  Bank: Hua Xia Bank, Banking Department.